IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ILENE I. CLARKE-KUREK,          )
          Plaintiff,            )
                                )
     v.                         )  Civil Action No. 04-0208
                                )
NORTH ALLEGHENY SCHOOL          )
DISTRICT,                       )
          Defendant.            )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                    March 27, 2006

     This is an action in employment discrimination. Plaintiff,
Ilene I. Clarke-Kurek, alleges that defendant, her employer North
Allegheny School District, failed to provide a reasonable
accommodation for her disability in violation of the
Rehabilitation Act, 29 U.S.C.A. § 794. Plaintiff also alleged
that defendant shared her confidential health information without
authorization in violation of the Employee Retirement Income
Security Act of 1974, but has now voluntarily withdrawn that
claim. Plaintiff seeks monetary damages and certain equitable
relief.

     Defendant has filed a motion for summary judgment [doc. no.
27] arguing that plaintiff cannot establish a prima facia case
under the Rehabilitation Act because she is not a qualified
individual with a disability. Defendant also argues that,
regardless, it did offer plaintiff a reasonable accommodation,
which she rejected. Finally, defendant contends that plaintiff

is judicially estopped from claiming a disability in these proceedings.

For the reasons set forth below, the motion will be granted.

I.    BACKGROUND

Except where specifically noted, the following material facts are not in dispute.  Other material facts will be discussed in the memorandum in context.

Plaintiff is a teacher employed by the North Allegheny School District.  She began her employment with defendant in August of 1993.  In February of 1999 she stopped teaching due to the effects of polycystic kidney disease.  This condition caused plaintiff to suffer chronic abdominal pain and fatigue.  In June of 1999 she retired from the district and applied for and received retirement disability benefits from the Pennsylvania State Employees Retirement System ("PSERS") for one year, beginning in September of 1999.  In July of 2000 she reapplied for and received disability benefits from the PSERS for another year.  In February of 2001 she returned to work at North Allegheny as an English teacher, however, in April of 2001 she stopped working again.

In August of 2001 plaintiff again attempted to return to work, but was only able to complete one day due to her medical

2

ailment. She reapplied for and received disability retirement benefits from the PSERS for another one year term beginning December 1, 2001. In October of 2002 she reapplied for and obtained a year's worth of disability retirement benefits for the fourth time. In December of 2003 she applied for and received her fifth year's worth of disability retirement benefits. From June of 1999 until the beginning of the 2004-2005 academic year, plaintiff worked as a teacher for only 99 days.

In May of 2003 plaintiff advised the defendant school district that she wanted to resume her teaching career and met with the district's director of human resources, Robert Devlin. Mr. Devlin advised plaintiff that she needed to provide the school district with a note from her physician approving her return to work. Her physician, Dr. Gonzales, provided a letter indicating that plaintiff could return to work under certain conditions. Specifically, Dr. Gonzales required that plaintiff: 1) be allowed to "take a break in between teaching periods"; 2) "be allowed to sit while teaching"; 3) have "an early release"; and 4) be "assign[ed] her two subjects that she had previously taught."

Defendant school district agreed to three of the four conditions. Defendant however, refused to shorten plaintiff's workday and grant her the "early release" required by Dr. Gonzales. Instead, defendant offered to structure plaintiff's

schedule such that the last two periods of her day, 8th and 9th period, would be her lunch and preparation periods, so that she would not have to teach at the end of the day.    Plaintiff indicated to Mr. Devlin at that time, and throughout the lawsuit, that because of her medical ailment she could not work the full 7-3/4 hour day expected of a teacher, and required a shortened workday.    Therefore, she rejected the district's accommodation proposal and filed this lawsuit.[1]

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."    To defeat summary judgment, the non-moving party cannot

---

[1]     Subsequent to the filing of this lawsuit defendant offered plaintiff a different position, that of G.O.A.L. instructor.    Plaintiff accepted that position and began working at the beginning of the 2004-2005 school year.    In accepting that position, she did not ask that she be allowed to leave early, presumably because it is a less stressful teaching position.    She has been in that position ever since and has been working full 7-3/4 hour days during this time period.

4

rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc.,

914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex v. Catrett, 477 U.S. 317, 324 (1986)).

The non-moving party has the burden of producing evidence to establish each element of his claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto.

### III.   DISCUSSION

As stated earlier, defendant has moved for summary judgment on plaintiff's Rehabilitation Act claim on several grounds. Because we find that plaintiff is not a qualified individual with a disability within the meaning of the Act, we will grant the motion.

Defendant contends that plaintiff is not a qualified individual with a disability because she cannot perform the essential functions of the job, with or without a reasonable accommodation. Specifically, defendant claims that an essential function of the job of a school teacher in the North Allegheny School District is that the workday total a minimum of 7-3/4 hours.   Furthermore, defendant submits that teachers are required, from time to time, to work an extend day to attend parent teacher conferences, staff and department meetings, and other school related activities.   In addition, defendant contends that every school teacher is required to work 35 additional hours throughout the course of the year, meeting certain other specifically defined work duties.   These 35 hours are in addition to the standard 7-3/4 hour work day.

Plaintiff disputes that a 7-3/4 hour workday is an essential function of the job.   Plaintiff bases this contention on the fact that she is aware of other teachers, for the most part athletic coaches, who are occasionally permitted to leave

7

the school prior to the completion of the entire 7-3/4 hour workday. Plaintiff contends that this evidence proves that working a full 7-3/4 day is not an essential function of the job. She further claims that she could have performed the job of a teacher with the reasonable accommodation of a shortened workday.

The dispositive question, therefore, is whether a 7-3/4 hour workday is an essential function of the job of a school teacher in the North Allegheny School District. If it is, then it is undisputed that plaintiff was unable to perform one of the essential functions of the job, and therefore, plaintiff cannot be a qualified individual within the meaning of the Rehabilitation Act.

In order to make out a prima facie case of discrimination under the Rehabilitation Act[2], plaintiff must establish that: (1) she has a "disability"; (2) she is a "qualified individual"; and (3) she has suffered an adverse employment action because of that disability. Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir.

---

[2]     Plaintiff's claim has been brought under the Rehabilitation Act because that statute applies to any entity that receives federal financial assistance. North Allegheny School District receives such assistance. Both the Americans with Disabilities Act and the Rehabilitation Act apply the same standards to disability claims, and therefore a claim under the Rehabilitation Act is analyzed under the same framework as a claim under the American with Disabilities Act. 29 U.S.C.A. § 794(d); Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997); Helen v. DiDario, 46 F.3d 325, 330-32 (3d Cir. 1995).

8

2002) (citing <u>Gaul v. Lucent Tech., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998)). Here, defendant does not dispute that plaintiff has a disability. Nor does defendant dispute that plaintiff suffered an adverse employment action as a result of her disability. Therefore, the only factor in dispute is whether plaintiff is a "qualified individual."

A "qualified individual" is, in pertinent part,[3] defined as one who, with or without reasonable accommodation, can perform the essential functions of the job that the individual holds or desires.    42 U.S.C.A. § 12111(8); <u>Buskirk</u>, 307 F.3d at 168. "[T]he burden is on the employee to prove that he is 'an otherwise qualified' individual."    <u>Shiring v. Runyon</u>, 90 F.3d 827, 832 (3d Cir. 1996).    The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit. <u>Gaul</u>, 134 F.3d at 580.

Whether a job duty is an "essential function" turns on whether it is "fundamental" to the employment position.    29 C.F.R. § 1630.2(n)(1).    The term "essential function" does not include the "marginal" functions of the position.    <u>Id</u>.  Evidence

---

[3]     There is no dispute that plaintiff "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." and thus, easily meets the first prong of the two-prong test.  29 C.F.R. § 1630.2(m).

of whether a particular function is essential might include, but

is not limited to:

> (I) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In reviewing these factors, and viewing the evidence in the

light most favorable to plaintiff, we find that there is no

genuine issue of material fact that a 7-3/4 hour workday is an

essential function of the job. Plaintiff cannot seriously

dispute that, in defendant's judgment, working a 7-3/4 hour day

is an essential function of the job of a teacher. Defendant

declared so, in writing, in its Teachers' Handbook:

9.0 Workday

> The professional employee teaching day shall consist of the duly contracted hours (currently 7-3/4 hours). One half hour for lunch, which may be off site with the appropriate

10

> notification determined by building administration, shall be part of the day. Employees not reporting at a designated time or who leave their designated assignment early shall be subject to the disciplinary procedure cited in Section V, Paragraph 6 of this Handbook, q.v. For tardiness or unauthorized early departure, the disciplinary procedure is modified as follows:
> Third and subsequent offenses: each subsequent offense shall result in a deduction from the employee's salary in the amount represented by the time lost from work in one-half hour components. Continued tardiness or early departure may result in progressively stronger discipline such as suspension without pay or dismissal.

The Handbook clearly establishes that leaving prior to the completion of the 7-3/4 hour workday, without authorization, results in disciplinary action, including dismissal. Teachers' Handbook, North Allegheny School District, Fall 2005[4], pg. 31.

In addition, the terms of the collective bargaining agreement specifically require that teachers work a 7-3/4 hour day.[5] The collective bargaining agreement provides in pertinent part as follows:

5. <u>Teaching Day.</u> All employees contracted full-time shall work where assigned a schedule of 7-3/4 consecutive hours on site,

---

[4]   The 2005 edition of the Teachers' Handbook is identical to prior, relevant versions of the Handbook, except for page numbering modifications.

[5]   For reasons that are clear only to plaintiff, she continues to insist that the collective bargaining agreement has no such requirement. Clearly it does.

11

> including thirty (30) minutes for lunch.
> This consecutive hour requirement shall not
> apply to special programs conducted outside
> the regular school hours or to a teacher who
> is contracted for less than a full-time work
> schedule. Employees may leave the building
> grounds during their lunch break with
> notification of departure and return to the
> building office.

6. Professional Responsibilities.   It  is
recognized that each employee is responsible
for a 7-3/4 hour day.   However to best
service our primary clients, the students
and parents, it is also recognized that
employees, from time to time, work beyond
the 7-3/4 hour day.   The purpose of this
section  is  to  codify  some  of  that
responsibility.

Each employee shall be required to participate
in activities which shall extend beyond the
scheduled 7-3/4 hour day. The additional hourly
requirement shall be as follows:

35 hours per year as follows:

Client Services - 16 hours
Professional Development - 7 hours
Curriculum/Instruction Work - 7 hours
Instructional Management - 5 hours

Collective Bargaining Agreement, North Allegheny School District,
2000-2005, pg. 18.

Defendant has also demonstrated that there are consequences
of not having a teacher available for the full 7-3/4 hour workday
on a regular basis. Defendant presented evidence that the
unavailability of a teacher at the end of the day on a regular
basis would cause increased work duties for other teachers.
Specifically, defendant's evidence of record establishes that a

12

teacher must remain in the school building during his preparation
period to cover classes, study halls, and other non-instructional
assignments, and to ensure that sufficient staff is available for
emergency situations. Teachers' Handbook, North Allegheny School
District, Fall 2005, pgs. 28-29. In addition, events occur both
before and after school such as parent-teacher meetings, staff
meetings, and department meetings that require teachers to be in
attendance at school and be available to cover for other
teachers. Welter Depo., p. 61; Welter Affid., pgs. 1-2.

Plaintiff has failed to place evidence on the record to
dispute defendant's evidence demonstrating that a teacher's
presence in the school building for a full 7-3/4 day is an
essential function of the job that is required by both the
Teachers' Handbook and the Collective Bargaining Agreement, and
is necessary to ensure adequate staffing and efficient operation
of the school environment. Rather, plaintiff simply contends
that working the full day is not an essential part of the job
because she is aware of instances in which other teachers have
not worked the full day. Specifically, plaintiff identified
seven teachers who she contends, from time to time, left school
early.

There is no dispute that four of the teachers she referred
to are athletic coaches. Defendant readily concedes that
athletic coaches are permitted to leave school early, on

13

occasion, in order to attend athletic contests and practices. Plaintiff has placed nothing on the record to dispute that coaches are permitted to leave the building early in order to perform further duties for the school district - i.e., supervising and coaching students on the school's athletic teams. Plaintiff has also produced no evidence that these coaches, or any other teachers, were scheduled to leave early on a daily basis throughout the school year. The court finds that the fact that these coaches were occasionally permitted to leave the building early in order to perform their job of supervising school athletic teams does not raise a genuine issue of material fact as to the essential nature of working a full 7-3/4 day.

Plaintiff also identified three other teachers who were permitted to leave early. Defendant placed evidence on the record that these teachers were permitted to leave early to compensate them for taking part in a cafeteria duty program. The program, however, was discontinued in 2001 (two years before plaintiff's requested accommodation), for the exact reason that it was creating a burden on the administration and teachers to cover the instructional and non-instructional duty assignments of the teachers who were leaving early on a regular basis. Plaintiff has placed nothing on the record to dispute this explanation.

14

In summary, when the evidence of record is viewed in the light most favorable to plaintiff, there is no genuine issue of material fact that working a 7-3/4 hour workday is an essential function of plaintiff's job.  No reasonable jury could conclude that working a 7-3/4 hour day was not an essential function of plaintiff's job based on the evidence of record.

Under the Rehabilitation Act, defendant need not eliminate an essential function in order to accommodate plaintiff's disability.  Skerski v. Time Warner Cable Co., 257 F.3d 273, 285-86 n.4 (3d Cir. 2001); Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000); see also Smith v. Blue Cross Blue Shield of Kansas, Inc., 102 F.3d 1075, 1076 (10th Cir. 1996); Hall v. United States Postal Service, 857 F.2d 1073, 1078 (6th Cir. 1988).  Because plaintiff could not perform an essential function of the job, plaintiff is not a "qualified individual" within the meaning of the Rehabilitation Act.[6]  Therefore, she cannot establish a

---

[6]     We need not decide whether the alternative accommodation offered by defendant (that her last two periods of the day be spent on non-instructional duties) was reasonable.  However, we note parenthetically that the Rehabilitation Act does not entitle a plaintiff to the specific accommodation that she seeks, but only to a reasonable accommodation.  See, e.g., E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 802 (7th Cir. 2005); Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 457-58 (6th Cir. 2004); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 954 (8th Cir. 1999).  Further, when a plaintiff rejects a reasonable accommodation the employee can no
(continued...)

prima facia case, making entry of summary judgment in favor of defendant appropriate.

## IV. CONCLUSION

Because plaintiff is not a qualified individual, she cannot make out a prima facia case of disability discrimination under the Rehabilitation Act. As such, defendant is entitled to summary judgment. An appropriate order follows.

---

[6] (...continued)
longer be considered a qualified individual and the employer is not liable. 29 C.F.R. § 1630.9(d) (ADA Regulations); Shultz v. Potter, 2005 WL 1841871, at *1 (3d Cir. Aug. 4, 2005) (Rehabilitation Act claim, ADA regulations applied); Verzeni v. Potter, 2004 WL 1946513, at *3 n.1 (3d Cir. Sep. 2, 2004) (same).

16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ILENE I. CLARKE-KUREK,                )
          Plaintiff,                  )
                                      )
     v.                               )   Civil Action No. 04-0208
                                      )
NORTH ALLEGHENY SCHOOL                )
DISTRICT,                             )
          Defendant.                  )

ORDER

Therefore, this $\underline{2\,7}^{th}$ day of March, 2006, IT IS HEREBY
ORDERED that defendant's motion for summary judgment [doc. no.
27] is GRANTED.

Judgment shall be entered in favor of defendant. The Clerk
of Court is directed to mark this case closed.

BY THE COURT:

Lancut, J.

cc:   All Counsel of Record

17